11-2437, Jimmy Crittenden, et al. v. Cook County Commission on Human Rights, et al. Would the lawyers please approach the bench and introduce yourselves. Bonnie Ben-Ovish for the appellants. Christopher Dressel for the appellant, Anita Boyd. Good morning, Your Honors. Maureen Hannan, Assistant State's Attorney on Human Rights, Cook County Commission, et al. Let's proceed. Thank you, Your Honor. Counsel and Your Honors, good morning. This case is concerning an incident that occurred on some day in July. We're not real sure what day it occurred. The sworn pleading by the complainant, who is in charge of signing her complaint and reading her complaint, is admitted to be false. It's admitted to be false in that the date is wrong. It's admitted to be false in that she didn't go back to work thereafter, although she did. In her complaint, July 19th, July 19th, July 19th. Testimony, July 26th. Verified complaint was never changed, though the attorneys knew it was false. And the hearing officer at page six says, page eight, I'm sorry, quote, just so I get my dates, we're talking about July 18th, July 19th of June, July 18th, 19th of 2006. Okay. All right. Let me ask you a question. You know, there's no question she was confused about the dates. All right. But that affects the credibility of the witness. No, Judge, I believe it's more than confusion about the dates. The case was. We know it's more than confusion. Because she didn't. All she said was, I was able to. There's no reason why she couldn't get it right the first time. There's absolutely no reason. And if your honor says that it's confusion. She couldn't be confused the first time around? Anybody can be confused. When you swear to something, it's more than you're not just saying, gee, I think it's this. Swear in what sense? Swear it in terms of the complaint? Yes. I'm not swearing it in front of someone and making a claim that it definitely happened on this date. She simply swore to everything on the complaint, including the date. She read the complaint. She verified it was true and correct. If that, if the court. What's your best case that says that confusion or swearing to the incorrect date voids or undermines the entire complaint? Well, Judge, there's lots of them. But let's start with the one where the guy. The strongest one. I can't say that there's a strongest one because there are so many. Well, I don't know that there are so many. I think you have to pick, just give us the strongest one because the strongest one, I think, if it were really standing for the proposition that you're urging for us, I would say that an incorrect date on a verified complaint is enough to cause the complaint to be tossed out. Do you have a case that says that? Yes, Judge. Not a date. Not a date, as you know, Judge. Not a date. But, Judge, what you're saying is that if I sign a contract to buy a house and I put down I want to buy it for $240,000 and later I said, oh, I made a mistake, I really only want to offer you $140,000, and the other side says, hey, we signed this contract. That was a mistake. I didn't read it properly. Contract law will vanish. Nothing you sign will be of any value. And there's a reason why it's verified, to make sure that you prove you say something. And additionally, Judge, the case law very clearly says whatever you plead you must prove. Whatever you plead you must prove. She pled July 19th. She didn't prove July 19th. It's the highest form of evidence, judicial admission. It's a sworn statement. It's the highest form of evidence there is. It cannot be contradicted. Geiser says a party may not prevail where the proof does not follow the allegations and conversely where the allegations are not substantiated. What are the allegations here? July 19th. Well, it goes beyond July 19th, I can assure you of that. The allegations go beyond the simple date. The chart says on July 19th this occurred to me. So what do you think is the crux of the allegations? Do you think it's the date or do you think it's the sexual allegations? One has to defend the case that's put in front of them. The case that was put in front was July 19th and never amended. That's the case that was defended. That charge was never proven. Would it have made a difference if it was amended? That's a difference, Judge, and I'm not here to argue that because it wasn't amended, although counsel said they knew about it. So let me get this right. Wasn't there a bench trial prior to the trial? There was a criminal trial. Exactly. There was a criminal trial. My client. Go ahead. I know your client was found not guilty in it, but prior to the date of the commission hearing, everybody knew that there was a difference in the date. Everybody knew except the hearing officer at the Cook County Commission. That raises the question, why if, as Justice Gordon just asked you, would making an amendment make it okay if, and you declined to answer, but the suggestion is it probably would be okay. So if it's okay to amend the complaint prior to the hearing, why should the complaint be tossed simply because no amendment came through but the testimony, in effect, makes clear that the date given on the complaint was in error? Judge, I didn't try the case, but what if I had five witnesses who would have testified that on July 26th, I was there all day and this, that, and that happened, and we didn't get to call those people because they weren't in the courtroom because we were trying July 19th. If you're talking, well, but you, but as Justice Lankin already pointed out, the criminal trial had preceded the hearing before the Human Rights Commission, and everyone except the hearing officer, according to your own statement, knew that the correct date was July 26th. No, no, no. No one knew that the correct date was. Well, everybody knew that she testified to at the criminal case. That's right. So who knows whether she'd go back to July 19th on the civil case? Who knows? Judge, you already unnoticed that July 26th might have played a role. Yes, Judge, I cannot say that. I didn't try the case. I cannot say that. And you talk about the cases. One case where the guy calls himself a lessor under a lease. Oh, that's illegal. I can't be a lessor under a lease to get a liquor license. I'll change my pleadings. I'll make myself a partner. The court says you can't do that. The guy gets on a bus. He says the bus driver started the bus before I sat down. The rest is case. Five people testify the guy was so drunk. When I say five, I'm slightly exaggerating. Just so it's clear, the reference you made to the contract, you can't amend a contract once it's written. And to the extent that someone is claiming a certain status as a lessor, you can't amend his status after the matters have gone forward. But a date is not equivalent to those two things. A date can be easily mistaken. Because you said it was the 18th or 19th. What if she comes out and says, no, the 18th wasn't it. It was absolutely the 19th. Judge, the 18th, 19th, the hearing officer said 18th, 19th. What happened is she's working on a shift that starts the 18th and goes to the 19th. So that's not the issue, Judge. The issue was when it was. And she testifies that the reason she knows it was July 26th, it's because it's a week before her husband's birthday. Why didn't she know that when she signed the charge? She never knows. Maybe there was evidence that couldn't have done it on the 18th or the 26th. People would have testified. Was there substantial cross-examination of the claim? Yes, there was. Regarding the incorrect date? Absolutely, Judge. So what more had to be brought out? Three witnesses could have said something about what didn't happen on the second date, on the 26th. We have witnesses, we have a video, we have this, we have that. Did anybody claim surprise and say, you know, this is unfair? We were proceeding under the assumption that it was on the 19th. I have four witnesses here who all are going to testify to the 19th. They weren't there on the 26th? Raising prejudice? Judge, in direct examination, there was no date ever mentioned. Okay? The hearing officer said on page 8, the very first thing, just so I get my dates, we're talking about July 18th, 19th of 2006. Okay. Did the complainant's lawyer say, no, no, Judge, we're not talking about those dates? No. So the case goes on. Did he say that's correct, Judge, and we're talking about those dates so that, in fact, you have the equivalent of an admission by the complainant reaffirmed at the date of the hearing? They did not, Judge. Nor did they correct, nor did they say anything to the court. And so the case goes on where defense lawyer, respondent's lawyer says, Judge says it's 1819. Let's go along. Anyway, I'm moving along, Judge, because I know you said you wanted us to move along. I want to get to the hearsay issue. A few days later, the complainant's son comes in and throws some chairs around the restaurant, the bar, and as the complainant says, he's a teenager, he acted a fool. Okay. Now, it's one thing for her to say that, but it's another thing, very clearly, for the hearing officer and the commission to say that's proof that it occurred. The son was not there at the time it occurred. It happened a couple of days later, so it could never be an excited utterance, and the excited utterance has to be about, I would assume, the sexual harassment, not somebody telling you about the sexual harassment. All right, let me ask you this. Let's assume that everything you say about the hearsay, it's true. Is that enough for us to overturn? Well, the hearing officer was very specific. I'll go to the fact that the complainant returned to the establishment with family members is significant because it corroborated the complainant's testimony that a significant event had occurred a few nights prior. If no event of consequence occurred on the evening of July 26th, why would she return? Hold on, counsel, let me ask you this. It goes to Justice Gordon's question, and that is why is that hearsay? What you've just read, the fact that they all returned to her establishment or she came back to her former place of employment with family members, and she testified to that. Why is that hearsay? Because it's assertive conduct hearsay. The son's throwing the chairs. Well, no, that wasn't part of the hearing officer's explanation for his ruling. He simply said, according to what you just read, that she returned to the place of former employment with family members. No, he says that an angry encounter would develop and an angry rose. How do we know they're angry? Somebody threw a chair. That's the definition of angry. If he would have just said, they just came and had a pleasant conversation. My apologies now, counsel. Go ahead and answer Justice Gordon's question, which is why should, even assuming that it is hearsay, why should that be enough to overturn the ruling? Because both decision makers, the hearing officer and the commission, specifically wrote, specifically wrote, we're basing our decision to this for this. We're using this as admissible evidence. If the court wants to go back and send it back and say, what would you do without this? That's a different story. But we don't have to speculate. They said it. They said it flat out. They didn't say, well, this is a piece of evidence. They said, they highlighted how important it was. Significant, corroborated, significant, had occurred, consequence. Liturgical reason. It corroborates everything she said. Don't forget, Judge, there were allegedly, I think it was 13 people in the bar at night. One person testified that it occurred. A couple people testified it didn't. There was allegedly, according to the complainant, a video taken by this person, Yvette, who she spoke to a few months before. Yvette wasn't called. The video wasn't produced. So we're talking about clearly a credibility issue. And her credibility was, according to both written decisions, corroborated by the use of this hearsay throwing of the chairs. And they said Mr. Crittenden was somebody who they didn't believe at all, basically. Well, but the complainant has to prove her case. If she's not credible, if everybody's not credible. But they did say she is credible. They're credible because they bunkers her credibility with an invisible hearsay. If it's hearsay. Right. If it's offered for the truth of the matter asserted. What is the truth of the matter asserted? That someone was angry based on what was heard. They didn't say based upon. What else would they have been angry about? That's for the trier of fact to decide. And he said. He didn't say that this woman was sexually molested. No, he didn't say she was sexually molested. He said that why would somebody come back. He's surmising that she wouldn't have brought her family back if something hadn't happened. He is not saying I'm taking this for the truth of the matter asserted. Because the matter asserted is that they were angry. That's the matter that's asserted. At page 217 to 18. Quote. Had the sexual harassment of which Ms. Boyd complained not occurred at all, there is little logical reasons that Ms. Boyd would return to the bar with family members, nor that an angry encounter would develop. We're not talking about her quitting. We're not talking about her having a bad day, getting bad tips. We're talking, he said, a sexual encounter, sexual harassment. Significant event. Again, it's not, gee, I told her to go home early. And it's very clear, Judge, that this is assertive hearsay. In the criminal case, the two cases that I said, the first one is Tiggs. A police officer comes upon a scene and four people are assaulting someone. And they put in the evidence. The police officer testified. I came upon this and I saw this person, these four people, attacking this man. Not that they attacked the man as a criminal offense, but because the man who they were attacking had just killed somebody. Why would they attack him unless he had just killed somebody? That's hearsay when the four of them don't testify. Why don't you save some time for your rebuttal? Certainly, Judge. I just want to make sure. I think you've covered what you wanted to. Thank you, Judge. Okay. Let's hear a response. Are you two going to split your time? Your Honor, I think I'm going to be handling the argument on behalf of the appellees, but Ms. Hannan is available and ready and willing to answer any questions that the panel might have. All right. Thank you. Good morning, Your Honors, and may it please the Court. This appeal is not an opportunity to re-litigate Ms. Boyd's sexual harassment claim on a clean slate. Rather, the question is … Well, counsel brought out a fact about this hearsay. How do you respond to that? I respond in two ways, Your Honor. Initially, I would note that it's not hearsay. Under People v. Jackson, conduct is only hearsay if it is, quote, deliberately communicative. There's no evidence that Ms. Boyd's son's actions were intended to make a communication. Although they had the incidental effect of revealing the son's mental state. Did the hearing officer take his actions as communicating something about what may have happened earlier? I think the hearing officer used his actions as an indication that something had happened earlier. Why isn't that communicating that very same message? Because in addition to being communicative, it has to be deliberately communicative. What does that mean? Which means that it has to be intended to make a statement, rather than just incidentally revealing the mental state of the person whose conduct is at issue. The second point I would make, Your Honor, is that even if the panel is convinced that this is hearsay, under the Abramson case, this would be harmless error. And the reason that's the case is because the commission cited numerous reasons for its determination that Ms. Boyd's evidence was credible and Mr. Krippin's evidence was not credible. Indeed, before the commission even began discussing the chair-throwing incident, the commission cited at least five other reasons for why it considered Ms. Boyd's evidence more credible than the evidence presented by the defendants. In this situation, it would be fanciful to believe that this was the sole and determinative reason that the commission found in favor of Ms. Boyd. All right. The appellate also brings out arguments that this was a verified complaint and not only was the date incorrect, but her testimony as to when she returned to work was incorrect. What effect does that have? I think the answer to that question, Your Honor, is that that goes to the weight of the evidence, and the weight of the evidence is an issue for the trial to have. In this case, it's true that the commission considered those considerations, just like the defendants wished, and it weighed them against the other considerations that weighed in favor of Ms. Boyd's credibility. After weighing all of the evidence, the commission determined that, on balance, Ms. Boyd's evidence was stronger, more compelling, and more credible than the evidence presented by Mr. Krippin. Now, Mr. Krippin argues that the judicial admission doctrine means that the commission, in essence, had no authority to weigh the evidence but must have completely disregarded the complaint, but that's simply not true. This Court's decision in Herman v. Power Maintenance makes clear that the judicial admission doctrine does not, quote, penalize confusion or an honest mistake. That is, quote, not among the purposes of the doctrine of judicial admission. Here, there's evidence on the record that speaks to the fact that this was simply an honest confusion on the part of Ms. Boyd. When she filled out the complaint, I gather she did it in front of an employee of the Common Commission on Human Rights who was asking her questions, and she was not looking at the calendar. She was off by one week. Here, there's no indication that the date was at all significant. It's not an element of the offense. Mr. Krippin's conduct would constitute sexual harassment, whether it occurred on July 26th or whether it occurred on July 18th, and that distinguishes it from the considerations that my colleague raised in his argument that go to changing a contract or some such. If you change the date in a contract, that could be legally significant, but here there is no significance as to the date. And furthermore, Ms. Boyd was very clear on the reasons why she was confused about the date. She simply didn't have a calendar, and I think that everyone has experienced a time in his or her life. How about her alleged confusion about when she returned to work and how many days she worked after that? I think what Ms. Boyd was getting at was that this incident was the impetus for her terminating her appointment very soon thereafter. She attempted to come to work the Friday after the Wednesday night that this occurred, but she realized that she just wasn't comfortable at work, and then the next morning she appeared to announce her resignation. So while she did return to work on that Friday, I think it's clear that what she meant was that because of this incident, she couldn't work at Jimmy's place anymore and therefore had to leave her employment, and I think that was all that she meant there. I think the most important consideration here is that the commission conducted a fair and comprehensive investigation of Ms. Boyd's complaint that heard evidence from both parties, and after developing an extensive factual record, the commission issued a thorough written opinion that clearly articulated the reasons why it found Ms. Boyd's evidence more credible and more compelling than the evidence presented by Mr. Crittenden. In addition, the decision clearly sets out the governing laws and soundly applies that law to the facts of the case. Finally, with respect to remedies, the commission clearly explained how it derived the damages that it awarded to Ms. Boyd. In short, the commission competently performed the adjudicative function that has been delegated to it under Illinois law. In our system of administrative review, if the commission does that, then its decision should not be disturbed on appeal merely because the appellate court might take a different view of the evidence had it been sitting as the trier of fact. What Illinois law is there that allows punitive damages to be assessed in a Cook County Commission on Human Rights case? The Cook County Human Rights Ordinance is very clear that the appellate court Does it mention punitive damages? It does not. However, this court's decision in 1212 Restaurant Group, which is a recent decision, explained that essentially the same provision in the Chicago Human Rights Ordinance authorizes the Chicago Human Rights Commission to award punitive damages. And I think that that decision was very clear. Based on what reasoning? Based on the reason that the list of remedies provided in the act is explicitly non-exclusive. So that means anything goes? I don't think it means anything goes. But I think a traditional form of remedy, such as punitive damages Aren't punitive damages only permissible in limited circumstances? It's not as if you get punitive damages in run-of-the-mill traffic accident cases or employment discrimination cases or a variety of other cases. Punitive damages aren't given out just whenever. I certainly agree with the proposition that it should be a rare remedy to be used sparingly, but this is just such a case. Aren't those rare remedies, don't courts look for the application of rare remedies not on the circumstances of the case, but on the law authorizing the assessment of punitive damages? And if there is no law permitting assessment of punitive damages, punitive damages can't be assessed. In all due respect, Your Honor, if the court were to come to that conclusion today, the court would be issuing a decision that's directly at odds with this recent decision in the 1-2-1-2 case. That happens, doesn't it? It happens, but I think this Court has a general rule that it prefers to follow the practice of stare decisis where possible. I don't think that there's any reason to think that the 1-2-1-2 case was wrong and should be overturned, which is essentially, I think, what would be happening if the Court ruled that punitive damages We wouldn't be overturning it, we would simply be disagreeing on a small part of it, wouldn't we? That's right, you would be disagreeing with that part of it. But I think, Your Honor... I mean, before that case, wasn't it always the law that punitive damages would be based on statutes that provide the authority to give punitive damages? I'm not sure if this Court, prior to 1-2-1-2, had a rule that said there must be an explicit punitive damages provision. But clearly the law now... You mean judges and people in judicial positions could just give punitive damages like candy? Is that what it is? I'm arguing that, as I said, I think it should be a remedy that should be used sparingly. But this was an egregious case of sexual harassment. There is definitely precedent, at least in the federal system... So do we have to make a finding that this was an egregious case? Is that the standard? This Court doesn't, but the Cook County Commission certainly... So we have to defer to their assessment of what's egregious and what isn't? Unless it's arbitrary and capricious, that would be the answer. Well, what if it's without statutory authorization? That's the question of statutory interpretation, which this Court resolved... Isn't that a question of law before us, really, to decide whether punitive damages should be assessed in this administrative proceeding? It's an administrative proceeding. It wasn't before a jury. It wasn't before even a circuit court judge. This is an administrative proceeding that I would think has a limited purpose, and I don't think that the purpose of assessing punitive damages is part of that delegation of responsibility. Well, in all due respect, Your Honor, I think that we will stand on this Court's decision in 1-2 restaurant on that question, and on the facts of the case. So that's one question is for legal authorization, and then the other question is whether on the facts of this case... It's a bit of a bootstrap argument if you can say, well, this other case already decided this, but what did the other case base its decision on? And it becomes a circle that really ends up showing no real authorization. I think that's the function of precedent in our system, Your Honor. Well, precedent needs a foundation. It can't simply be this is the result that occurred in this case, therefore it's precedent. That's not the way it works. I think what the Court was basing its result in that past case on was two factors. First, that the statute clearly provided that the list of remedies was not exclusive, and second, that punitive damages are a remedy that are traditionally awarded in certain employment discrimination and sexual harassment cases. So there's general precedent in our system of law for awarding punitive damages. I think the Court relied on that fact, and the fact that the statute explicitly said that the list of remedies provided therein is meant to be not exclusive, and therefore found that it was a legitimate exercise of the Commission's discretion to award. You know, when the law says, you know, the remedies listed here are non-exclusive, it generally refers to, you know, some sort of modification or some sort of creative remedy that might fit the facts that the case brings before it. It would have been a simple matter for the Cook County to have said, punitive damages are permissible, and it would have been an easy thing to do, and yet they didn't do it. So it's not as if, you know, it was something that was totally beyond their, maybe it was totally beyond what they were thinking, because it was such a simple thing to have included, but they didn't. I think when the county wrote the statute, they were writing it against the background of general principles of employment discrimination law, and those principles include the award of punitive damages in certain cases. So let me get this right. You're saying that the ordinance changes according to the employment law that is progressing in common law in Illinois, so that, in fact, this ordinance is becoming a common law vehicle and that it can change over time depending on how other employment discrimination cases are being handled? That's not what I'm saying. What I'm saying is that when it explicitly leaves the range of remedies open-ended by saying that they're non-exclusive, and then the court is faced with the question of what belongs in this non-exclusive category, the court should look at our traditions, sort of general judicial traditions, as to which type of remedies are appropriate. One type of remedy that has traditionally been awarded in employment discrimination cases is punitive damages. As I've said, not every employment discrimination case deserves punitive damages. Most don't. But in an egregious case like this, where the sexual harassment is in essence accompanied by a physical assault, a very modest punitive damages award, in this case only a small fraction of the actual economic damages award, is eminently appropriate. Why would that be? Here he was assessed over $40,000 in economic loss to the complainant, $5,000 in the other damages, and then $5,000 on top of that for punitive. It seems to me that $5,000 in excess of $45,000 seems a bit of an overkill. The United States Supreme Court in the BMW case. But now you're talking case law again, and then we go back to the same issue about whether or not it's authorized at all. So why don't we wrap it up? Unless the court has any further questions, I think we will stand on freeze. Thank you, Your Honors. May I address the court on this issue? On the punitive damages issue for the commission? Okay. I'll give you one minute. Thank you. The purpose of punitive damages, Justices, is to punish, deter, and teach. And if you believe, as the commissioner did, who heard this case, that these events happened, they were outrageous, and they deserve to have punitive damages tagged on. In addition, the ordinance for the Cook County Commission is modeled after the city of Chicago ordinance, which this court upheld in Page, and provided that although punitive damages were not expressly stated, they were permissible. So I urge you to please follow the reasoning that this court held in Page and then affirmed again in 1212. Thank you. Thank you. Very quickly, Your Honors, there were some questions about how the date got wrong. I want to read to you from Page 30 of the transcript. You know what I'd like you to do on rebuttal, really? Well, I think there were some questions that she saw a calendar. She didn't see a calendar. How did you determine that date? It was a mistake. So you don't recall how you determined it? Answer, no, I don't, but it was a mistake. Nobody forced her to say that date. Justices, counsel talked about the weight of, it goes to the weight. No, a judicial admission has full weight. It's 100% weight. It's a dead weight. It's nothing stronger. So we don't apply the harmless error rule here. Is that what you're telling me? Yes. And show me a case that says that. I'm showing you the cases that say a judicial admission may not be contradicted. I cited six of them. Judicial admission may not be contradicted. And any of those cases, were there dates? No, John. I said that before. No. Okay. I mean, people are usually mistaken about dates. I mean, it's an ordinary thing every day. When I sign a sworn document, I make sure that everything in there is correct. When I have my clients swear an affidavit, they make sure that everything is correct. Well, that's because you're a good lawyer. But this lady is not a lawyer. She didn't go to law school. But she reads. She can read. Clients read. Clients look at things. I want to get to your point about the communication, whether this was intentional or not. That's not the issue here. The issue is, what did this convey to the hearing officer? He was arguing that it didn't constitute hearsay because it wasn't deliberative. And if it's not deliberative, hearsay definition requires two things, deliberativeness and whatever the other one was. He obviously went to this place and he deliberated what to do there. He doesn't have to say, gee, if I do this, it will help my mother's case. That's not deliberative. And that's not what's necessary. I mean, it sounds like he was just angry. He was angry. And the judge didn't say that he didn't make a, he didn't make a, what? The judge specifically said, I'm using that. He was angry because he believed his mother was harassed. That may be true. But that tries to breakfast that the mother was correct. You know, just to throw you a softball, if the mother told the son a lie, he would be mad. Absolutely, Judge. And that's why it has to be an assertion for the truth. Because he wasn't there. He's relying on what his mother told him. And, therefore, everybody believes their mother. Okay. I think your time is up. Do you have another question? I thought, in my recollection of this fact, didn't Mr. Crittenden bring that up first? He was the one who brought out the throwing of the chair. He brought out that they came. I don't think he brought out that they threw the chair. I think he did bring out that they came. And they messed up the joint. That's what he said. Messed up the joint. He was the one who brought it out. I was thinking back about that. The mother said the teenager came, he acted the fool, he threw a chair. That's what the hearing officer ruled upon. I'm just saying your client is the one who brought out that the young man came into our business. I don't want to argue with you because I'm not sure. But I can tell you that nobody mentioned that point in their briefs. Thank you. I'm pretty sure it's your client. Well, I want to thank you. You've given us a very interesting case. Your briefs were very well done. Your arguments were very well done. We'll take the case under advisement.